An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-665

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

v.

REGGIE DEVON AVENT

Edgecombe County
No. 12 CRS 2258

Appeal by defendant from judgments entered 7 March 2013 by Judge Walter H. Godwin, Jr. in Edgecombe County Superior Court. Heard in the Court of Appeals 6 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Tammy A. Bouchelle, for the State.*

> *Winifred H. Dillon, for defendant-appellant.*

CALABRIA, Judge.

Reggie Devon Avent ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of possession of a dog for dog fighting and baiting ("dog fighting"), cruelty to animals, and restraining a dog in a cruel manner ("malicious restraint"). We find no error.

## I. Background

On 17 April 2012, Officer Curtis Robinson ("Officer Robinson") of the Rocky Mount Police Department ("RMPD") responded to a Crime Stopper's tip regarding dogs that were located behind a house adjacent to an apartment building on North Raleigh Street in Rocky Mount, North Carolina ("the property"). Elizabeth Swartz ("Officer Swartz"), Rocky Mount's animal control supervisor, also responded to assist with the investigation, along with other members of RMPD (collectively, "the officers").

Officer Robinson discovered three pit bull dogs: a brown female with her puppies confined in a pen, a black and white pit bull, and a brown and white pit bull (collectively, "defendant's dogs"). The brown female pit bull was kept in a pen covered with tarps. Although a small container of food was in the pen, no water was available. Neither of the other dogs had adequate food or water, and the black and white pit bull had several flies feeding on a wound on its ear. According to Officer Swartz, the dogs appeared underweight, their ribs were visible, and their stomachs were tucked into an "hourglass shape."

All three dogs were chained to the property, including the female inside the pen. However, the chains restraining the two dogs outside the pen appeared to be heavy gauged chains intended

for industrial use. One of the chains removed from defendant's dogs weighed thirteen pounds. Due to the chains tethering them in place, the dogs were unable to reach the few available empty dishes.

The officers discovered a trash can in the yard containing penicillin for livestock, medicine, vitamin supplements, syringes, and a break stick commonly used in dog fighting to separate dogs. The break stick had gouge marks and was discolored with what appeared to be blood. (T. p 96) Defendant later admitted the medical supplies and break stick were his and that he used them on his dogs.

A beaten trail led into the woods from the yard where defendant's dogs were chained. Three more pit bulls were discovered in a clearing about twenty feet away. These dogs ("Stancil's dogs") belonged to defendant's friend, Kelly Stancil. Stancil's dogs were also restrained by unnecessarily heavy chains. One pit bull had wrapped its chain several times around nearby trees, shortening its reach of available space, and another appeared to have several untreated bite wounds. Stancil's dogs did not have access to adequate food or water.

Another trail led into the woods away from the clearing where Stancil's dogs were restrained. Fifty feet away, the

officers discovered a clearing in the woods approximately thirty feet in diameter. One tree on the edge of the clearing appeared to be used to chain dogs. Another tree had a rubber tube hanging from it that appeared to have been repeatedly bitten by dogs. A portion of the clearing extending towards North Raleigh Street had been freshly cut. The grass had been cut short and there were tire tracks visible where vehicles had parked. Officers discovered canine skulls and bones in the woods approximately fifteen feet from the clearing.

All six adult pit bull dogs and the puppies were transported to the animal shelter. The next day, defendant arrived at the animal shelter to speak to Officer Swartz and attempted to explain his dogs' presence on the property. Although Officer Swartz never mentioned the break stick, defendant told her he "only used the stick when the dogs broke loose from their chain [sic] and attacked each other." Defendant later returned to the animal shelter demanding to know what evidence RMPD "had on him."

Defendant was arrested and charged with dog fighting, misdemeanor cruelty to animals, and malicious restraint. At trial in Edgecombe County Superior Court, the jury returned verdicts finding defendant guilty of all three offenses. On 7

March 2013, the trial court sentenced defendant to a minimum of eight and a maximum of nineteen months for the dog fighting charge and 120 days each for the misdemeanor cruelty to animals and malicious restraint offenses. The trial court suspended defendant's misdemeanor sentences and placed him on supervised probation at the conclusion of his active sentence for the dog fighting offense. The trial court also ordered as a special condition of probation that defendant was not to possess, own, or control any animal during his probationary sentence. Defendant appeals.

## II. Motion to Dismiss

Defendant first argues the trial court erred in denying his motion to dismiss because the evidence was insufficient to establish that defendant possessed the requisite intent for each charge. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "In its analysis, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012)

(citations omitted). "The trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *Id*. at 92-93, 728 S.E.2d at 347 (citations omitted).

In the instant case, both possession of a dog for the purpose of dog fighting and baiting and misdemeanor cruelty to animals require intent specific to the charge. For dog fighting, a defendant must intend "that the dog be used in an exhibition featuring . . . the fighting of that dog with another dog or with another animal[.]" N.C. Gen. Stat. § 14-362.2(b) (2012). For misdemeanor cruelty to animals, a defendant must "intentionally . . . wound, injure, torment, kill, or deprive [any animal] of necessary sustenance[.]" N.C. Gen. Stat. § 14-360(a) (2012). In contrast, the malicious restraint offense requires a defendant "maliciously restrain[] a dog using a chain or wire grossly in excess of the size necessary to restrain the dog safely[.]" N.C. Gen. Stat. § 14-362.3 (2012). For the purposes of this statute, "maliciously" means "the person imposed the restraint intentionally and with malice or bad motive." *Id*.

The State presented evidence showing that defendant's dogs had doghouses available, but inadequate food and no water. The

mother pit bull was the only dog with access to food, and there was only a "small container" of food available. The dogs were noticeably underweight, though not emaciated. Defendant's dogs were restrained by heavy chains. The chains appeared to be intended for industrial use, but not for restraining dogs. Officer Swartz testified the chains were too heavy for the dogs, and the dogs were dragging the chains.

There was debris on the ground near defendant's dogs, consisting of rubber gloves, syringes, and gauze. Officer Swartz testified that the livestock vitamin supplements, syringes, penicillin, and peroxide packets found in the trash can near defendant's dogs were items commonly used in dog fighting to build the animals' strength and endurance and to clean wounds without veterinary care. She also indicated that she believed defendant was self-medicating his animals for the purposes of dog fighting.

The rubber hose on the tree in the clearing was evidence of training dogs to fight. Officer Swartz testified that when dogs pull on a rubber hose, "the resistance . . . will strengthen their muscles . . . and also give them more endurance so they'll last longer in a fight." The break stick found in the trash can near defendant's dogs was another commonly used tool in dog

fighting, intended to separate dogs engaged in a fight. There was also evidence of canine remains around the third clearing, where the officers discovered canine skulls and bones.

The medical supplies and vitamin supplements, together with the evidence of the clearing, the rubber tubes, and the canine remains, indicate that dog fighting occurred in close proximity to the yard where defendant's dogs were restrained. Taken in the light most favorable to the State, the evidence supports reasonable inferences that defendant intended to utilize his dogs for dog fighting, that defendant's dogs had been intentionally deprived of necessary food and water, and that defendant's dogs were intentionally restrained by chains exceeding the size necessary to safely restrain them. Under such circumstances, "it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (citation omitted). The State presented such substantial evidence in this case. Accordingly, the trial court properly denied defendant's motion to dismiss.

### III. Jury Instruction

Our Courts may review unpreserved issues for plain error when they involve errors in jury instruction. *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotations omitted). Under the plain error rule, a defendant must convince the Court "not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

The statute for malicious restraint states that a person "who maliciously restrains a dog using a chain . . . grossly in excess of the size necessary to restrain the dog safely is guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 14-362.3 (2012). The statute indicates "maliciously" means "the person imposed the restraint intentionally and with malice *or* bad motive." *Id*. (emphasis added). Defendant argues that the trial court failed to instruct the jury on the definition of malice, and therefore committed plain error. We disagree.

In the instant case, there was no pattern jury instruction available for the malicious restraint charge. The State

submitted proposed jury instructions, which defendant had the opportunity to review. The trial court instructed the jury as follows:

> The defendant has been charged with restraining a dog in cruel manner [sic]. For you to find the defendant guilty of this offense, the [S]tate must prove two things beyond a reasonable doubt.
> First, that the defendant did restrain a dog using a chain grossly in excess of the size necessary to restrain the dog safely.
> And, second, that the defendant acted maliciously. Maliciously means that the person imposed the restraint intentionally and with malicious or bad motive.
> So if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant did restrain a dog using a chain grossly in excess of the size necessary to restrain the dog safely and that the defendant acted maliciously or with bad motive, then it would be your duty to return a verdict of guilty.
> If you do not so find or if you have a reasonable doubt as to one or both of these things, then it would be your duty to return a verdict of not guilty.

The court specifically instructed the jury on the term "maliciously," and indicated it meant "that the person imposed the restraint intentionally and with malicious or bad motive," which substantially mirrors the language of N.C. Gen. Stat. § 14-362.3. The evidence at trial indicated that at least one of defendant's dogs had been tethered with a thirteen pound chain, and both Officers Robinson and Swartz testified that the chains

used on defendant's dogs were much heavier than necessary to safely restrain them. Officer Swartz specifically testified that the chains used were intended for "any kind of industrial use . . . chaining property down, chaining gates shut, tow chains . . . but not for a dog." In addition, Officer Swartz testified to evidence of dog fighting on the property, including the medical supplies, break stick, and canine remains on the outskirts of an apparent dog fighting ring.

The statutory language does not require a finding of malice in order to support a conviction. The jury may also find that defendant imposed the restraint intentionally and with "bad motive." N.C. Gen. Stat. § 14-362.3 (2012). In the instant case, the language of the jury instruction reflects the statutory language. The jury ultimately returned verdicts finding defendant guilty of all three charges, indicating that they found evidence beyond a reasonable doubt for all three offenses, including malicious restraint. While a better practice would have been to give a specific instruction defining malice, there was sufficient evidence provided at trial to indicate that the jury would have come to the same conclusion even with such an instruction.

Assuming, *arguendo*, that the trial court *should* have instructed on malice, defendant's argument still fails. Defendant fails to show that the jury would have returned a different verdict even with an instruction on malice. Therefore, defendant fails to demonstrate plain error.

## IV. Conclusion

The State presented substantial evidence at trial to support the element of intent for all offenses. Defendant fails to show that the jury would have returned a different verdict had the trial court included a specific instruction on malice. We hold the trial court properly denied defendant's motion to dismiss and that the instruction given for malicious restraint reflects the language of the statute. For these reasons, we find no error.

No error.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.

Report per Rule 30(e).